UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

       J.P.R. MECHANICAL INC., d/b/a           Case No. 19-23480-dsj
       JPR MECHANICAL,                  Chapter 7

                 Debtor.
----------------------------------------------------------------X
MARIANNE T. O'TOOLE as Trustee of the Estate
Of J.P.R. Mechanical Inc.,

               Plaintiff,           Adv. Pro. No. 21-07079-dsj

    -against-

RADIUM2 CAPITAL, LLC, f/k/a RADIUM2
CAPITAL, INC.,

               Defendant.
----------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

The Kantrow Law Group, PLLC
Attorneys for Radium2 Capital, LLC
Fred S. Kantrow, Esq.
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| Table of Authorities |  | ii |
| Preliminary Statement |  | 1 |
| Argument |  |  |
| I. | Summary Judgment Standard | 2 |
| II. | The MCA Agreement is Consistently Ruled To be a Legal and Enforceable Purchase ad Sale of Accounts Receivable and Not a Loan That is Illegal or Unenforceable | 3 |
| III. | The Trustee is Not Entitled to Summary Judgment on the Claim for Preferential Transfer Under section 547(b) of the Bankruptcy Code Because the Alleged Preferential Payments Were Made on a "Debt" Incurred by the Debtor In the Ordinary Course of Business Under Section 547(c)(2) of the Bankruptcy Code | 5 |
| IV. | Radium2 Was Not a Creditor and Payments Were Not Received on an Antecedent Debt | 8 |
| V. | Trustee is not Entitled to Disallowance of Claims | 9 |
| Conclusion |  | 10 |

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                **Page**

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986)……………………………………………  2

*Belom v. National Futures Ass'n,*
      284 F.3d 795 (7th Cir. 2002)………………………………………  6

*Cazenovia College v. Renshaw,*
      222 F.3d 82 (2d Cir. 2000)…………………………………………  4

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986)……………………………………………  2, 3

*Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson,*
      238 F.3d 891 (7th Cir. 2001)………………………………………  9

*In re Bayonne Med. Ctr.,*
      429 B.R. 152 (Bankr. D. N.J. 2010)………………………………  7

*In re Grand Union Co.,*
      219 F. 353 (2d Cir. 1914)…………………………………………  4

*In re Magic Circle Energy Corp.,*
      64 B.R. 269 (Bankr. W.D. Okl. 1986)……………………………7

*Kapila v. Media Buying, Inc.,*
      355 B.R. 876 (Bankr. S.D. Fla. 2006)……………………………  7

*LG Funding LLC v. Branson Getaways, Inc.,*
      207 NY Slip Op 32387(U) (N.Y. Sup. Ct. Nassau Cty. 2017)…….  3

*LG Funding LLC v. City N. Grill Corp.,*
      2018 N.Y. Misc. LEXIS 728 (N.Y. Sup. Ct. Nassau Cty. 2018)…..  9

*Lujan v. National Wildlife Foundation,*
      497 U.S. 871 (1990)………………………………………………  3

*Powerez Corp. v. Reliant Energy Services, Inc.,*
      551 U.S. 224 (2007)………………………………………………  6

*Rapid Capital Fin. LLC v. Natures Mkt. Corp.,*
    66 N.Y.S.3d 797 (N.Y. Sup. Ct. Westchester Cty., 2017)............ 9

*Redmond v. CJD & Assocs., LLC*
    536 B.R. 896 (Bankr. D. Kan. 2015).................................... 7

*Rubenstein v. Small,*
    273 A.D. 102 (N.Y. App. Div., 1st Dept. 1947)........................ 4

*Rushton v. SMC Elec. Prods.,*
    500 B.R. 635 (B.A.P. 10th Cir. 2013).................................... 7

*Walters v. Metro. Educ. Enterprises, Inc.,*
    519 U.S. 202 (1999)..................................................... 9-10

*Wilkinson Floor Covering, Inc. v. Cap Call, LLC,*
    59 Misc. 3d 1226(A)(N.Y. Sup. Ct. N.Y. Cty. 2018)................... 9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

        J.P.R. MECHANICAL INC., d/b/a           Case No. 19-23480-dsj
        JPR MECHANICAL,                  Chapter 7

                  Debtor.
------------------------------------------------------------------X
MARIANNE T. O'TOOLE as Trustee of the Estate
Of J.P.R. Mechanical Services Inc.,

                  Plaintiff,           Adv. Pro. No. 21-07079-dsj

    -against-

RADIUM2 CAPITAL, LLC, f/k/a RADIUM2
CAPITAL, INC.,

                  Defendant.
------------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

      Radium2 Capital, LLC, f/k/a Radium2 Capital, Inc., by and through its attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for its Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgment and states as follows:

### PRELIMINARY STATEMENT

      The chapter 7 trustee (the "Trustee") has sued Radium2 Capital, LLC, f/k/a Radium2 Capital, Inc., ("Radium") in this adversary proceeding for both receiving a preference and a determination of the validity, extent and priority of a lien and disallow any claims that Radium has against the debtor's estate.  Radium is a commercial finance company and provided pre-petition financial services to J.P.R. Mechanical Inc., d/b/a JPR Mechanical, the debtor (the "Debtor").

      The Trustee's claims rely on the erroneous argument that Radium's transactions with the Debtor were loans and therefore payments made by the Debtor to Radium during the preference

1

period were on account of antecedent debt and thus recoverable by the Trustee. However, Radium's agreements with the Debtor provide that their interpretation is subject to the laws of the State of New York, and the Trustee's mischaracterization of the transactions is directly contradicted by the substantial body of New York case ruling that Radium2's form of agreement encompasses a legal and enforceable purchase and sale of account receivables that is not a loan and is not illegal or unenforceable.

The Trustee's preference claim must fail because Radium2 did not receive property of the bankruptcy estate as it owned, by virtue of its purchase of the assets, the assets that it received. In order to recover a preference the predicate that property of the estate was transferred must be satisfied. Viewed subjectively, the Debtor made the same kinds of transaction with Radium2 and other similar transactions with other financial services companies like Radium2. Even view objectively, the transactions were typical, arms-length commercial transactions in the marketplace as part of an established industry where thousands of similar transactions are made on similar terms on a frequent basis.

Finally, the Trustee's disallowance claim must also fail because Radium2 has no claims against the Debtor to be disallowed. In any event, the disallowance claim must fail because the preference claim upon which it is premised fails.

## **ARGUMENT**

I.  **Summary Judgment Standard**

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact concerning an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), however

2

does not require the moving party to disprove elements of non-moving party's case. *Lujan v. National Wildlife Foundation,* 497 U.S. 871, 885 (1990). Rather, once the moving party satisfied its initial burden, the burden then shifts to the non-moving party, who must "go beyond the pleadings and by his/her own affidavits" or by the "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial.": *Celotex, supra,* 477 U.S. at 324.

II.    **The MCA Agreement is Consistently Ruled to be a Legal and Enforceable Purchase and Sale of Accounts Receivable and Not a Loan that is Illegal or Unenforceable.**

The Trustee's position that the Debtor's transactions with Radium2 were loans is erroneous. A Merchant Cash Advance ("MCA") such as the ones that are the subject of this adversary proceeding is routinely upheld by courts as a transaction for the purchase and sale of receivables and not as a loan. MCA transactions are characterized as follows: [A]n MCA is a specialized form of factoring in which a merchant sells its future receivables for a discounted amount paid up front. The advantage to an MCA transaction is that it typically provides merchants...access to funds much faster than applying for a traditional loan from a lending institution. *LG Funding, LLC v. Branson Getaways, Inc.,* 207 NY Slip Op 32387(U) at 4 (N.Y. Sup. Ct., Nassau Co. 2017). An MCA agreement should be upheld as a transaction for the purchase and sale of accounts receivable and not as a loan subject to usury laws where the money advanced to the merchant is not repayable in the absolute. "Many trial courts have examined similar agreements in the last several years, and have largely determined that most are not loans, but purchases of receivables." *LG Funding, LLC, v. Branson Getaways, Inc.,* Id. Because Radium2's form of MCA agreement provides that its interpretation will be governed by the laws of the State of New York, the analysis follows below is based on New York law.

Under the common law, a loan generally means a contract pursuant to which one party transfers to another party money or its equivalent that the latter agrees to repay later. *Cazenovia College v. Renshaw*, 222 F.3 82, 84 (2d Cir. 2000). The classic definition of a loan was articulated by the United States Court of Appeals for the Second Circuit in *In re Grand Union Co.,* which is paraphrased as follows: "[T]o constitute a loan there must be (i) a contract, whereby, (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees t pay for the sum or items transferred at a later date. This definition implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer. Where such is the intent of the parties, the transaction will be considered a loan regardless of its form." 219 F. 353, 356 (2d Cir. 1914). Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. *Rubenstein v. Small*, 273 A.D. 102 (N.Y. App. Div., 1st Dept. 1947).

Here, Radium2s' MCA agreements are complete, clear and unambiguous on their face and are entitled to enforcement according to the plain meaning of their terms. The language of the MCA agreements evidences a clear intent by the parties to enter into a transaction for the purchase of receivables and not a loan. The MCA agreements themselves state that the transactions are not intended to be loans. There is no indication that the Debtor or its guarantor believed that the MCA agreements were loans or that they were paying interest thereunder. The conduct of the parties entering into the MCA agreements further shows that the parties intended to enter into transactions or the purchase of receivables because Radium2 fully performed under the MCA agreements by paying for the receivables and the obligor merchant partially performed by delivering Radium2 part but not all of the receivables. There is no indication that the Debtor objected to the terms of

4

the MCA agreements. In short, there is nothing to rebut the presumption that the MCA agreements are enforceable.

The MCA agreements are missing several material terms that typically define a loan of money. There is no promissory note. There is no maturity date. The amount owed never increases with time. There are no scheduled payments or a fixed repayment term. The guarantees are no broader that the obligations under the MCA agreements, and the guarantor's payment requirements are no greater than that of the merchant's. The money advanced by Radium2 is not payable in the absolute. The Debtor's payments under the MCA agreements were wholly contingent upon the performance of its own business. Radium2 assumed the risk that there would be no receivables and therefore no payment. The express language of the MCA agreements, the attendant circumstances, and the business relationship between the parties establishes that the parties intended the MCA agreements to constitute purchases of receivables and not loans.

III.  **The Trustee is Not Entitled to Summary Judgment on the Claim for Preferential Transfer Under section 547(b) of the Bankruptcy Code Because the Alleged Preferential Payments Were Made on a "Debt" Incurred by the Debtor in the Ordinary Course of Business Under Section 547(c)(2) of the Bankruptcy Code.**

The Trustee takes the position that the debtor's routine payment to Radium2 should be ignored because the underlying MCA transactions are themselves not ordinary under the first clause of section 547(c)(2) of the Bankruptcy Code. Section 547(c)(2) provides that "[T]he trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the Debtor and the transferee (subjective standard); or made according to ordinary business terms. (objective standard)."

The critical phase "made in the ordinary course of business or financial affairs of the Debtor" is the exact same phrase in both the so-called "subjective payment test" of section 547(c)(2)(A0 and in the first sentence of section 547(c)(2). The identical phrase appears twice, in the very same statutory sentence. A court "can assume that Congress intended the same terms used in different parts of the same statute to have the same meaning." *Belom v. National Futures Ass'n.,* 284 F.3d 795, 798 (7th Cir. 2002); *see also, Powerez Corp. v. Reliant Energy Services, Inc.,* 551 U.S. 224, 232 (2007)("identical words and phrases within the same statute should normally be given the same meaning."). Because the two provisions are identical and we already know that the second calls for a subjective standard, the language found in the very first clause of section 547(c)(2) should also be measured by a subjective standard. If the subjective standard applies, then this Court should look only at the transaction described in the complaint to see if it is consistent with what these particular parties normally did together. What other people might think of these transactions does not matter because the objective standard does not apply. The Debtor and Radium2 engaged in multiple transactions together using the same form of contract, and thus the transactions described in the complaint are subjectively "ordinary" for these particular parties.

If such multiple transactions between the parties were subjectively ordinary (and they were), then it simply does not matter what the Trustee seeks to mischaracterize the transaction as, because it does not matter what the third party thinks the agreement was. To talk about what standards the Trustee may wish govern the MCA transactions or to talk about what complete strangers to the transaction might think, is to administer the wrong legal test: the objective one. What is clear is that the Debtor came to Radium2 for more money even after the Debtor knew full well what the price it was going to pay for that cash advance. Even after the first transaction by

6

and between the parties were paid out, and the Debtor was free to never do business with Radium2 again, the Debtor returned for additional MCA agreements.

The MCA transactions engaged in by and between Radium2 and the Debtor were typical and normal transactions involving MCA providers. The transactions were "quite regular." *In re Bayonne Med. Ctr.*, 429 B.R. 152, 187 (Bankr. D.N.J. 2010)(finding that loan with below market terms by lender that had not made unsecured loans in 30 years still qualified as debt incurred in the ordinary course of business of the parties.). Clearly, Radium2 is not an insider of the Debtor.

A "showing that a transaction occurred often, or regularly, is sufficient to demonstrate the debt was incurred "regularly" and thus the ordinary course of business defense is applicable to repayment of such debt. *Kapila v. Media Buying, Inc. (In re Ameri P.O.S. Inc.)*, 355 B.R. 876, 880 (Bankr. S.D. Fla. 2006); *see also In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr. W.D. Okl. 1986) ("the cornerstone of this element of a preference defense is that the creditor needs to demonstrate some consistency with other business transactions between the Debtor and the creditor."). These two obligations were therefore subjectively incurred in the ordinary course.

Even if one assumes – for the sake of argument alone  - that an objective standard applies to the question of what constitutes an ordinarily incurred debt und the very first clause of section 547(c)(2), that objective standard would still be satisfied under all of the facts and circumstances of this case. Under an objective test, "courts generally are interested in whether the debt was incurred in a typical, arms-length commercial transaction that occurred in the marketplace. *Rushton v. SMC Elec. Prods. (In re C.W. Mining Co.)*, 500 B.R. 635, 642 (B.A.P. 10th Cir. 2013). Debt is not incurred in the ordinary course of business "if creation of the debt is atypical, fraudulent, or not consistent with an arms-length commercial transaction." *Redmond v. CJD & Assocs., LLC (In re Brooke Corp.)*, 536 B.R. 896, 912 (Bankr. D. Kan. 2015).

7

The history of the last fifteen years notwithstanding, the Trustee apparently still believes that MCA agreements are somehow "atypical" creatures. The belief is demonstrably wrong. In fact, by 2018, there were many hundreds of such MCA financial service providers, and they make available billions of dollars of capital to thousands of businesses. MCA companies operate nationally and internationally. In the last ten years, there has been a substantial worldwide growth in the number of MCA companies. Radium2 is just one of the MCA companies in this industry of thousands and has done business with numerous companies. The Radium2 agreement with the Debtor did not deviate from "market" terms for an MCA transaction. Such transactions are therefore, "objectively" ordinary. In addition to being "subjectively" ordinary, because the transactions were consistent with what is happening between thousands of strangers in the larger MCA marketplace. Thus, the Trustee's attempt to avoid the transaction as a preference must fail.

Similarly, the Trustee's argument that Radium2 received more than it would have in a hypothetical liquidation likewise is misplaced. Somehow, the Trustee argues that because of other significant secured debt to which the Debtor was obligated precludes Radium2 from receiving payments to which it was otherwise entitled. When Radium2 entered into the MCA agreements with the Debtor they were subject to other UCC-1 filings by other entities. According to New York law, "[A] transferee of such funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." N.Y.U.C.C. Law §9-332(b). As a transferee of funds from a deposit account Radium2 took the funds free of security interests.

## IV.    Radium2 Was Not a Creditor And Payments Were Not Received on an Antecedent Debt.

As a threshold matter, in order to succeed on her claim, the Trustee must establish that Radium2 was a creditor and that any payments received by it were due to an antecedent debt.

8

However, she cannot establish either. There are numerous cases that support the proposition that the agreements between Radium2 and the Debtor were not loans. *Wilkinson Floor Covering, Inc. v. Cap Call, LLC, et al*, 59 Misc. 3d 1226(A) (N.Y. Sup. Ct. N.Y. Cty. 2018)(2018 WL 2293196 (Table) 2018 N.Y. Slip Op. 50709(U) ("Because plaintiff's obligation to pay [defendants] future receivables is conditioned on plaintiffs' receipt of such, the agreements at issue are not loans.). *See also LG Funding LLC v. City N. Grill Corp.*, 2018 N.Y. Misc. LEXIS 728, at *4 (N.Y. Sup. Ct. Nassau Cty. 2018(collecting cases). Since these transactions are not considered loans under New York law, they cannot be criminally usurious. *Rapid Capital Fin., LLC v. Natures Mkt. Corp.*, 66 N.Y.S.3d 797, 801-02 (N.Y. Sup. Ct. Westchester Cty., 2017) ("Because review of the terms of the agreement establishes as a matter of law that it is a purchase agreement rather than a loan, defendants' usury defense has not merit, and must be dismissed pursuant to CPLR 3211(b).").

## V.    Trustee is not Entitled to Disallowance of Claims.

The Trustee complaint asks the Court to disallow any claims filed by Radium2 until it returns the transfers alleged to be preferential to the Trustee. In support of this the Trustee relies on section 502(d) of the Bankruptcy Code, which provides that "the court shall disallow any claim of any entity...that is a transferee of a transfer avoidable under [section 547] of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable..." This provision presupposes that a transferee has filed a proof of claim in a debtor's bankruptcy case.

In statutory interpretation, courts begin with the plain meaning of the statute. *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). "Statutory terms or words will be construed according to their ordinary, common meaning unless these are defined by the statute or the statutory context requires a different definition." *Id. (citing Walters v. Metro.*

9

*Educ. Enterprises, Inc.,* 519 U.S. 202, 207 (1999).  The plain language of section 502(d) of the Bankruptcy Code provides that a court may "disallow any claim of any entity whose transfer is avoidable under the specified subsections.  While Radium2 filed a proof of claim in the underlying bankruptcy case, because the Court cannot allow the Trustee to recover on any alleged preference recovery, the claim cannot be disallowed.

## CONCLUSION

The Trustee has failed to meet her burden to establish that the transfers at issue here were preferential and therefore avoidable.  The transfers were made in the ordinary course of business and for these reasons the Trustee's motion for summary judgment must be denied.

Dated: Smithtown, New York
February 17, 2025

The Kantrow Law Group, PLLC
Attorneys for Radium2 Capital, LLC

BY:    S/Fred S. Kantrow
Fred S. Kantrow
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com